864

The People of Puerto Rico, Plaintiff and Appellee, *v.*
Saturnino Rodríguez, Defendant and Appellant.

No. 10222.   Argued January 12, 1944.—Decided January 31, 1944.

*F. González, Jr.,* for appellant.   *R. A. Gómez, Prosecuting Attorney
(Fiscal),* and *Luis Negrón Fernández, Assistant Prosecuting At-
torney,* for appellee.

Mr. Acting Chief Justice Travieso delivered the opinion of
the court.

The appellant was prosecuted and convicted on a charge
of incest for having had carnal intercourse with his legiti-
mate daughter, Eneida Rodríguez.   He has appealed from
the judgment whereby he was sentenced to a term of three
years in the penitentiary, and in support of his appeal he
urges that the lower court erred (1) in permitting the dis-
trict attorney to call the prosecutrix to testify on three dif-
ferent occasions, that is, without her giving her testimony

in a continuous form; (2) in admitting the testimony of two medical experts regarding facts which occurred in 1942, notwithstanding the acts charged against the accused took place in January and February, 1940; and (3) in holding that, the uncorroborated testimony of the prosecutrix was sufficient to convict the defendant. We will consider the first two assignments together.

1–2. We have carefully examined the transcript of the evidence. It appears from it, indeed, that the prosecutrix, Eneida Rodríguez was called to the stand on three different occasions during the trial. Before summarizing her testimony, given in three parts, it seems advisable to state that the witness is a daughter of the defendant and was born on December 28, 1927. She was, therefore, thirteen years and one or two months old in January and February, 1940, when the acts charged against the defendant occurred, and fifteen years of age at the time of the trial.

After a lengthy examination, and when her natural reluctance to testify against her own father, over two years after having been betrayed, was finally overcome, the witness stated in substance:

That she attended school up to the seventh grade; that she lived with her family in the country and in town; that in 1940 she was a patient in the Municipal Hospital of Caguas and was there treated by Doctors Forastieri and Santiago, who examined her; that she has never had a love affair; that she was a virgin in January 1940, but ceased to be such after that time, she having been betrayed; that it was her father, Saturnino Rodríguez, who ruined her; that the fact occurred in 1940, in Cidra. At this stage, the district attorney asked that the witness be put under the rule in order that her direct examination might be resumed later. On cross-examination by the defense, the witness stated that prior to the trial she had voluntarily testified before Judge Molina, giving the same testimony as the present one, which

was true. At the close of the cross-examination, the judge asked the district attorney whether he intended to recall the witness, and upon the district attorney answering in the affirmative the witness was put under the rule.

Mrs. Rosa Meléndez, Supervising Nurse of the Caguas Hospital, was then called to the witness stand. Several incidents occurred during her examination, and the court, on motion of the defense, ordered that the whole of her testimony be stricken out. It was then that the district attorney recalled the prosecutrix for further examination. The defense objected, relying on §519 of the Code of Civil Procedure (1933 ed.), the court granted the leave requested by the district attorney, the defense took an exception, and Eneida Rodríguez went on to testify that her father had done what he did to her in her house; that she was asleep, wearing a nightgown; that the lights were out; that the act was done "without my liking it because I was lying down"; that she made no outcry because she could not do it, because she was sleeping; that after that night, her father did the same thing with her three times, after having ruined her; that she did not tell her mother; that her mother was not at home; that she did not tell anybody about it; that she had waited so long, two years—until she entered the hospital—before saying anything, because her father prevented her from doing it, by commanding her to keep silent and by threatening her, and that she was afraid that he would kill her, because he had told her so. Upon being asked by one of the jurors whether or not it was true that her father had threatened her in order to keep her from talking, the girl answered in the affirmative. After this part of the examination was finished, the district attorney asked leave to withdraw the witness "for the present" in order to further examine her later on if necessary.

The district attorney then offered the testimony of Dr. Manuel Santiago for the sole purpose of showing that the girl had been deflowered. The defense objected on the ground

that, as the fact had occurred in 1940 and the medical examination had been made in 1942, the testimony of the physician regarding such remote facts was inadmissible. The court decided to admit the testimony to establish the fact of the defloration. The witness testified that he had examined the sexual organs and verified that she had been deflowered, without his being able to state exactly when such defloration had taken place. Upon the refusal of the court to strike out the testimony of the physician, the defense took an exception.

The district attorney again asked to be permitted "to put some new questions to the prosecutrix." The defense objected. The court granted the permission requested, because there was involved a girl of 14 to 16 years of age who had shown some reluctance in her mode of testifying, and because, there existing the relationship of parent and child between her and the defendant, she should be given a full opportunity to testify. The defense took an exception and the girl again occupied the witness stand.

The third part of the girl's testimony covers fifteen pages of the transcript of the evidence. If the numerous and unnecessary incidents between the prosecution and the defense are discarded, the only thing that is left of this part of the testimony of Eneida Rodríguez is that she did not remember how the defendant had ruined her. In order to refresh her memory, she was shown a copy of the statement she had made before the justice of the peace and she answered that what she testified at the trial was the same thing that she had stated to the justice of the peace. After she read her former statement, the district attorney insisted that the girl should give details as to what her father had done to her and what she had felt. To those insistent questions the girl gave evasive answers. It seems perfectly natural to us that the girl should be reluctant to describe in all its details the criminal act committed against her, especially when we bear in mind that the defendant was her father and that she was testifying in his presence.

Dr. Forastieri testified and corroborated the testimony of Dr. Santiago, and stated that the girl had been taken to the hospital by her mother; that she was in a highly nervous condition; that she complained of sickness, but it was found that she was not really sick, only suffering from a "nervous shock"; that the defloration of a girl 14 or 15 years of age affects her nervous system, disturbing and exciting it.

As may be seen, the only direct evidence produced by the district attorney was the girl's testimony, and the only corroborating evidence was the testimony of the two physicians as to the fact that the girl had been deflowered.

Section 519 of the Code of Civil Procedure, on which the appellant relies for his first assignment, reads thus:

"A witness once examined can not be reexamined as to the same matter without leave of the court, but he may be reexamined as to any new matter upon which he has been examined by the adverse party. And after the examination on both sides are once concluded, the witness can not be recalled without leave of the court. Leave is granted or withheld, in the exercise of a sound discretion."

The reason for the rule which prohibits the recall of a witness after he has been examined by both parties, is, besides the matter of order and speed in the proceedings, the danger that the witness who has already been examined may hear the testimny of the other witness and, when called again to testify, may attempt to change his former testimony or render it stronger and more emphatic against the party to be prejudiced by such testimony. However, as the law recognizes that there may be cases where the interests of justice would suffer if the recall of a witness who has already testified were not permitted, it left the matter of granting or refusing such permit to the sound judgment and discretion of the court.

In the case at bar the court, in our judgment, acted correctly; and, regard being had for all the attendant circumstances, it made proper use of the discretion vested in it by

law. *People* v. *Gómez,* 45 P.R.R. 787, and *People* v. *Lorenzano,* 52 P.R.R. 860. It is true that the injured girl was permitted to testify three times, but her three statements, may be regarded as really constituting a simple statement since the entire testimony of Mrs. Meléndez was stricken out and that of the two physicians was confined to a single point: the defloration of the girl. The latter was put under the rule and so remained throughout the trial. Also her last statement was practically a repetition of what she had formerly testified. The defendant had an opportunity to hear her whole testimony and exercised his right to cross-examine her. We do not think that the rights of the defendant were prejudiced in any way by permitting the girl to give her testimony in the manner already stated by us.

█ Nor was there any error in admitting the testimony of the two physicians who examined the girl in 1942, two years after the alleged defloration had occurred. The time elapsed from the commission of the act charged against the accused to the making of the medical examination is immaterial, inasmuch as the only fact sought to be proved was that the girl had lost her virginity. There was nothing in the testimony of the physicians which would tend to connect the defendant with the crime charged against him. See *State* v. *Sullivan,* 159 La. 589, 105 So. 631; *State* v. *Columbus,* 154 Atl. 605; Underhill Criminal Evidence, §651, p. 1242.

██ 3. Did the trial court err in instructing the jury that the uncorroborated testimony of the prosecutrix in a case of incest is legally sufficient to support a conviction?

Section 250 of the Code of Criminal Procedure specifies the cases in which an accused can not be convicted upon the testimony of the prosecutrix unless her testimony is corroborated by other evidence. The offenses herein enumerated are procuring an abortion; inveighing or enticing an unmarried female of previous chaste character, under the age of

25 years, for the purpose of prostitution; seduction under promise of marriage; and rape.

As may be seen, said Section does not include incest among the crimes in which corroboration of the testimony of the prosecutrix is required. Because of the lack of such inclusion, this court, in the case of *People* v. *Vázquez,* 34 P.R.R. 538, held that said corroboration is not required, either, where the crime charged is that of assault with intent to commit rape.

The lower court based its ruling, that corroboration of the testimony of defendant's daughter was not necessary, on the case of *People* v. *Stratton,* 141 Cal. 606. The appellant argues that the decision in said case was repudiated by this Supreme Court in the opinion rendered in the case of *People* v. *Alvarez,* 47 P.R.R. 152. This compels us to analyze both decisions.

In the cited case from California, Stratton was charged with having had sexual intercourse with his daughter, who was less than 14 years of age and therefore incapable of consenting to the act committed on her person. The girl testified as to repeated acts of sexual intercourse forced upon her by her father. The court gave the following instructions to the jury:

"The court instructs you that the consent of both parties is not essential to the crime of incest. If the party charged have sexual intercourse with a female related to him within the degree of consanguinity within which marriage is prohibited, he is guilty of the crime of incest, whether the intercourse was with or without the consent of such female."

After transcribing the text of §285 of the Penal Code of California, which is identical with §275' of our Code, the court went on to state:

"Upon this it is urged and argued that the crime of incest cannot be committed without the mutual consent of the parties, and that where, as here, the act is shown to have been accomplished under

circumstances amounting to the rape of the female, the crime is not incest, but rape. . . . .

"But this reasoning does not commend itself. It interprets the law as making mutuality of agreement and joint consent of the essence of the crime. This is done by judicial construction, and not by the express declaration of the law. The gravamen of the crime of incest, as of rape, is the unlawful carnal knowledge. In rape it is unlawful because accomplished by unlawful means. In incest it is unlawful regard to the means, because of consanguinity or affinity. Where both the circumstances of force and consanguinity are present, the object of the statute being to prohibit by punishment such sexual intercourse, it is not less incest because the element of rape is added, and it is not less rape because perpetrated upon a relative. In this, as in every offense, the guilt of the defendant is measured by his act and intent, and not by the act and intent of any other person. That such has been the view of this court is evidenced by People v. Kaiser, 119 Cal. 456, where the defendant was indicted for the crime of incest, alleged to have been committed upon his daughter, a girl under thirteen years of age. As intercourse with a female child incapable in law of giving consent is declared to be rape, it was argued against the indictment that the offense charged was rape. But this court said: 'Assuming that the facts stated in the indictment in this case were sufficient to constitute the crime of rape, the daughter then being under the age of consent, still, under section 285 of the Penal Code, they clearly constituted the crime of incest, and the defendant was therefore properly put upon trial for that offense.' (Citing authorities.)

"If the prosecutrix, being of the legal age of consent, consents to the incestuous intercourse, unquestionably she is *particeps criminis*, and her testimony, like that of any other accomplice, uncorroborated, is insufficient to uphold a conviction. (Citing authority.) But if upon the other hand, she is the victim of force, or fraud, or undue influence, or is too young to be able to give legal assent, so that she does not wilfully and willingly join in the incestuous act, she cannot be regarded as an accomplice."

The case of People v. *Alvarez, supra,* can not be cited as authority for the proposition that the uncorroborated testimony of the prosecutrix in a case of incest is insufficient to support a conviction. That question was not involved or decided in said case. Alvarez was charged with having com-

mitted incest with each of his two daughters and the principal question was whether certain statements made by both girls to two of their aunts sometime after the incest was committed were admissible, as part of the *res gestae,* to corroborate the testimony of the injured girls. It was held that they were admissible.

As the crime of incest is not one of those comprised in the provisions of §250 of the Penal Code, and as the prosecutrix in this case can not be considered as an accomplice, we hold that the trial court did not err in instructing the jury as it did. See 31 C. J. 387, 388, §47.

The judgment appealed from must be affirmed.

Mr. Justice Snyder did not participate.